United States *v.* Lorsch & Co. (No. 1803).[1]

1. CONSTRUCTION, PARAGRAPH 356, TARIFF ACT OF 1913—"SUITABLE FOR USE."

The expression "suitable for use," in paragraph 356, tariff act of 1913, does not, in the tariff sense, imply or require chief use, but is limited or qualified to *susceptibility for* the use expressed.

2. CHAIN USED IN MANUFACTURING JEWELRY.

Brass and German-silver foxtail chain, valued at less than 30 cents per yard, shown to be used in the manufacture of jewelry, is dutiable under paragraph 356, tariff act of 1913, as metal material "suitable for use in the manufacture of any of the foregoing articles," and not under paragraph 167 as metal articles or wares not specially provided for.

United States Court of Customs Appeals, May 14, 1917.

APPEAL from Board of United States General Appraisers, G. A. 7986 (T. D. 36799).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Thomas J. Doherty,* special attorney, of counsel), for the United States.

*Comstock & Washburn* (*Albert H. Washburn* of counsel) for appellees.

[Oral argument May 4, 1917, by Mr. Doherty and Mr. Washburn.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court.

This appeal involves the single question of law as to the tariff meaning of the words "suitable for use." The case arose under paragraph 356 of the present tariff act, wherein is used the term "suitable for use in the manufacture of any of the foregoing articles in this paragraph." The Board of General Appraisers, Mr. General Appraiser Brown dissenting, found as facts:

(1) The merchandise consists of brass and German-silver foxtail chain; (2) valued at less than 30 cents per yard; (3) that the predominating use of the foxtail varieties of chain in the numbers referred to is for eyeglass holders and gas and electric light fixtures. It is not used for the manufacture of mesh bags or purses. Its use in a mesh bag is as a draw-string tassels.

The board then concisely stated the issue as presented upon this record as follows:

The question then arises, being suitable for use in the manufacture of articles mentioned in paragraph 356, Shall it be dutiable thereunder, rather than under the quoted portion of paragraph 167 as metal articles? Do the words "suitable for use" govern the classification of the merchandise, although such use is minor in comparison to its general use? Is "composed wholly or in chief value of brass or other metal," as found in paragraph 167, more specific than "mesh and other materials of metal * * * suitable for use in the manufacture of any of the foregoing articles," as found in paragraph 356?

The majority opinion held that "suitable for use" in a tariff sense means "chiefly used." The Government appeals. The majority opinion of the board is predicated upon the reasoning and authorities

[1] T. D. 37222 (32 Treas. Dec., 621).

applicable to "use" where that term is employed generally and simply without any qualifying phrase or word.    The well-settled rule in such cases, based upon a long and consistent line of decisions, was announced by this court, and approved in United States *v.* Irwin & Co. (7 Ct. Cust. Appls., 360; T. D. 36906) and Brown & Co. *v.* United States (7 Ct. Cust. Appls., 309; T. D. 36871), in United States *v.* Boker & Co. (6 Ct. Cust. Appls., 243; T. D. 35472), as follows:

> All these considerations imply and necessitate that the *use* of the implement must determine its classification whether or not an agricultural implement with the paragraph, and that that use, and the determinative fact, is *chief use.*
>
> That rule is so well established and of such frequent reiteration by the courts that its suggestion seems sufficient.   This court affirmed and applied the rule as to "smokers' articles" in Knauth *v.* United States (1 Ct. Cust. Appls., 334; T. D. 31432); as to "wire rods," in Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528); applied it in Drakenfeld & Co. *v.* United States (2 Ct. Cust. Appls., 512; T. D. 32248); adopted it as to "jute manufacturing machinery" in United States *v.* Hempstead & Son (3 Ct. Cust. Appls., 436; T. D. 33004); and as to "philosophical and scientific instruments," etc., in United States *v.* Kastor & Bros. (6 Ct. Cust. Appls., 52; T. D. 35323).   In fact no principle is more firmly established in customs adjudication. Magone *v.* Wiederer (159 U. S., 555); Magone *v.* Heller (150 U. S., 70); Cadwalader *v.* Wanamaker (149 U. S., 532); Walker *v.* Seeberger (149 U. S., 541); Chew Hing Lung *v.* Wise (176 U. S., 156); Meyer *v.* Cadwalader (89 Fed., 963); Smith *v.* United States (93 Fed., 194).

The adoption of "use" as the test of the application of paragraph 356, in the quoted particular, is not unqualified, but is limited or qualified to *susceptibility for* the use therein expressed.   This, and all previous tariff acts, abound with instances wherein "use" is made the criterion of applicability in different degrees or subject to different qualifications or limitations.   Such terms as "chief use," "suitable for use," "expressly for use," "such as is used," "for use as," "solely for use as," "fit only for," and other similar expressions are familiar terms in tariff adjudication.   Each is given its own peculiar sphere of influence in tariff classification.   Presumptively this difference of words imports a different meaning, and so the adjudications are.

The term immediately before us was before this court and interpreted in Kahlen *v.* United States (2 Ct. Cust. Appls., 206; T. D. 31947), wherein we said: "In the tariff law the term '*suitable*' means *actually, practically, and commercially fit.*"   See also Mamluck & Co. et al. *v.* United States (6 Cust. Appls., 556, 561; T. D. 36198).   The rule to the same effect was announced by the Supreme Court.   In the case of Chew Hing Lung *v.* Wise (176 U. S., 156), the United States Supreme Court, in considering the question whether or not tapioca was "fit for use as starch" within that language as used in paragraph 323 of the act of 1890, said:

> We think the language of the paragraph means any preparation which is so far fit for use as starch as to be *commonly used* or *known* as such *or as a substitute therefor*, * * * and * * * the article here in controversy does not and can not compete

with American starch for any of the purposes for which starch is *commonly and ordinarily* used in this country.

"Actually," or "practically," or "commercially," or "commonly," fit for or used as, in no sense.imply or require chief use. Though, of course, as said by this court in French Import Co. et al *v.* United States (7 Ct. Cust. Appls., 460; T. D. 37048), chief use necessarily implies a common and, therefore, a suitability of use.

. In United States *v.* MacNaughton (5 Ct. Cust. Appls., 114; T. D. 34166) we said:

A thing may be generally used for a certain purpose where that use is simply *a common one* or one not uncommon or unfamiliar, but which, nevertheless, *does not constitute its chief use.*

Of course, these words do not imply every possibility of remotely ultimate use of crude materials. They imply a commercial suitability or fitness in the condition imported. Klipstein *v.* United States (1 Ct. Cust. Appls., 122; T. D. 31120). They exclude any mere incidental use from a controlling classification factor. Richard & Co. *v.* United States (3 Ct. Cust. Appls., 306; T. D. 32587). The subjects, however, of which the term is herein predicated leave the question of absurd application out of the case.

While the board speaks of a "minor" use here shown for jewelry purposes, a careful reading of this record discloses that a vast preponderence of the testimony was to the effect that these importations were "commonly" so used. This testimony was not contradicted by a single witness. True, a considerable use was shown for other than jewelry purposes, but on cross-examination those witnesses admitted that that condition did not at enactment of this law obtain. Indeed, were the finding material and the case one of original impression, upon this record the court would be inclined to find that the chief use of these materials *as imported* was for jewelry purposes. The court is clearly of the opinion, however, that the term "suitable for use" does not in the tariff sense imply or require chief use.

*Reversed.*