(C.D. 2750)

KARL SCHROFF & ASSOCIATES, INC. v. UNITED STATES

United States Customs Court, First Division

(Decided August 16, 1966)

*Wallace & Schwartz* (*Joseph Schwartz and Earl R. Lidstrom* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before OLIVER, NICHOLS, and WATSON, Judges

OLIVER, Judge: The protest at bar relates to the importation of certain merchandise described on the commercial invoice as "buckle foils." The foils, as represented by plaintiff's exhibit 1 (R.6), consist of thin, flat, rectangular pieces of metal, measuring approximately

3 by 1¾ inches, etched, stamped, or otherwise marked with a raised leaf-like design, but not drilled, punched, or further shaped.

The merchandise was assessed with duty at the rate of 40 per centum ad valorem under paragraph 1527(d) of the Tariff Act of 1930, as modified by T.D. 52739, and is claimed to be dutiable at only 19 per centum ad valorem as manufactures of metal, not specially provided for, under the provisions of paragraph 397 of said act, as modified by T.D. 54108. An alternative claim for classification under paragraph 346 was conceded by plaintiff to be unsupportable due to the value limitations in that paragraph and is hereby deemed abandoned.

With respect to the specific dimensions of this case, the following portions of the tariff statute have pertinence:

Paragraph 1527, Tariff Act of 1930, as modified by T.D. 52739:

(c)  Articles valued over 20 cents per dozen pieces, designed to be worn on apparel or carried on or about or attached to the person, such as and including buckles, cardcases, chains, cigar cases, cigar cutters, cigar holders, cigar lighters, cigarette cases, cigarette holders, coin holders, collar, cuff, and dress buttons, combs, match boxes, mesh bags and purses, millinery, military and hair ornaments, pins, powder cases, stamp cases, vanity cases, watch bracelets, and like articles; all the foregoing and parts thereof, finished or unfinished:

    \*    \*    \*    \*    \*    \*    \*

(d)  Stampings, galleries, mesh, and other materials of metal, whether or not set with glass or paste, finished or partly finished, separate or in strips or sheets, suitable for use in the manufacture of any articles provided for in paragraph 1527(a), (b), or (c), Tariff Act of 1930:

    \*    \*    \*    \*    \*    \*    \*

    Of other metal or metals, plated or unplated_____ 40% ad val.

Paragraph 397, Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares not specially provided for, whether partly or wholly manufactured:

    \*    \*    \*    \*    \*    \*    \*

Composed wholly or in chief value of iron, steel, copper, brass, nickel, pewter, zinc, aluminum, or other base metal (except lead), but not plated with platinum, gold, or silver, or colored with gold lacquer:

    \*    \*    \*    \*    \*    \*    \*

    Not wholly or in chief value of tin or tin plate:

    \*    \*    \*    \*    \*    \*    \*

    Other, composed wholly or in chief value of iron, steel, brass, bronze, zinc, or aluminum (except \* \* \*)_____ 19% ad val.

The only witness called at the trial was Mr. Haskell Bobins who testified on behalf of the plaintiff. Mr. Bobins identified himself as president of Robert Bobins & Co., manufacturers of men's belt buckles and tie clips. It was his testimony that the involved buckle foils, which he had helped to design, are imported by his firm for use with a new style western buckle called a trophy buckle, plaintiff's exhibit 2 (R. 7). He stated that the foil was made to fit onto the flat surface or cavity portion of the buckle, and when so attached, a complete, salable buckle results as evidenced by plaintiff's exhibit 3 (R. 8). The foil is in no way further fabricated after importation but is affixed to the buckle by gluing.

Plaintiff advances the two-fold argument that the imported foils are not dutiable under paragraph 1527(d) because (1) they are parts of the buckles to which they are attached, and (2) such buckles are not classifiable under the provisions of paragraph 1527. Defendant's arguments primarily focus on the first part of plaintiff's position maintaining that plaintiff has failed to overcome the presumption that the foils are suitable for use in the manufacture of articles in paragraph 1527, and, in particular, named or like articles contained in paragraph 1527(c).

It seems apparent from the testimony and from an examination of plaintiff's exhibit 2 that the buckles to which the foils are affixed perform the task of an ordinary belt buckle in holding the ends of a wearer's belt together. Such types of buckles are considered necessary adjuncts rather than incidental articles of mere personal comfort, convenience, or adornment and, therefore, not the kind of buckle included within the provisions of paragraph 1527(c) or similarly worded provisions under previous acts. Cf. *United States* v. *Horstmann Co.*, 14 Ct. Cust. Appls. 443, T.D. 42079; *United States* v. *Joseph G. Brenner Co.*, 19 CCPA 105, T.D. 45243; *Weyenberg Shoe Mfg. Co.* v. *United States*, 38 CCPA 122, C.A.D. 448. In the *Weyenberg* case, *supra*, the involved buckles were found to be outside the scope of paragraph 1527(c) and, because of the value limitations imposed therein, outside the buckle provisions in paragraph 346. They were held to be dutiable, therefore, under the basket provisions in paragraph 397 as manufactures of metal, not specially provided for. It is this sequence of classification treatment that the plaintiff claims is due the imported foils as parts of paragraph 346 belt buckles.

It should be noted at the outset that plaintiff's remaining claim for classification under the provisions of paragraph 397 does not require a showing of "parts" in the full tariff sense of the word, namely, necessity of function and dedication to use. Cf. *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758. By showing the

latter element involved in a "parts" question, that is, dedication to use, the plaintiff would be able to negate, as a corollary proposition, the presumption attending the collector's finding that the imported foils are suitable for use in the manufacture of any paragraph 1527 article.

In its brief, plaintiff argues that the evidence establishes that the imported merchandise, by design and shape, is dedicated to use with trophy belt buckles with which it fits perfectly, and that it has no other use. One of the oldest judicial tests for determining whether an article is dedicated to use as a part of another article in its imported condition was enunciated by the court of appeals in *United States* v. *American Bead Co. et al.*, 9 Ct. Cust. Appls. 27, T.D. 37873, and recently relied upon by the same tribunal in *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 931. In distinguishing between a material which is adaptable to use in the making of different things and a part of something, the court in the *American Bead* case, *supra*, observed that—

* * * until it has been finally appropriated to some definite manufacturing use and has been given the *distinguishing characteristics which clearly identify it* as one of the components ultimately to be assembled into a particular completed whole, it can not be regarded as a part of any specified manufacture. [Emphasis added.]

Again, in *The Harding Co. et al.* v. *United States*, 23 CCPA 250, T.D. 48109, the court spoke as follows respecting the dedication required for a showing of "parts":

Running through most of the decisions pertinent to the inquiry here, it is made clear that before imported merchandise shall be regarded as parts of an article *the identity of the individual article must be fixed* with *certainty*. * * * [Emphasis quoted.]

Finally, this court in *Davies Turner & Co.* v. *United States*, 13 Cust. Ct. 190, C.D. 893, noted:

It has almost consistently been held that a part must have been manufactured and dedicated solely for use on a particular article *and to be useful for no other purpose.* * * * [Emphasis quoted.]

Various judicial interpretations suggest that dedication to use requires a showing not just of present use but of limitation of use. The test is the same for a showing of "unfinished" articles, *United States* v. *National Importing Co. (Inc.) et al.*, 12 Ct. Cust. Appls. 186, T.D. 40169, that is, "whether such a dedication has been effected depends upon * * * condition and potential uses at the time of importation." *Paramount Import Export Co. et al.* v. *United States*, 45 CCPA 82, C.A.D. 677. An examination of the imported merchandise before this court reveals no such "distinguishing characteristics which clearly identify it" as physically appropriated to sole use in the manufacture

of trophy belt buckles. In substance, the imported foils appear as thin, flat, rectangular pieces of ornamental metal. Their utilization with the trophy buckles is, in essence, the gluing of one flat surface to that of another. While they are cut to the length and width of the buckle plates, the resulting size remains rather common in appearance and unpersuasive to the conclusion that other potential uses have been negated thereby. Plaintiff's witness was unable to shed any further light on the issue of dedication, answering as follows with respect to a question from counsel on the subject:

A. It fits directly into the cavity. It was made to fit in there and stay in there so it wouldn't fall off. In other words, it is worn on the body so it needed a cavity and the gluing to make sure it doesn't wear out or come out.

That the foils fit into the cavity portion of the buckles or that they were designed to is apparent, but the question is, was the design of such a nature as to effectively limit the commercial uses of the foils to use with the buckles only? This is not so apparent.

It is settled law that the collector's classfication carries with it the presumption that the collector found every fact necessary to sustain it. *United States* v. *John A. Steer Co.*, 46 CCPA 132, C.A.D. 715. In finding that the imported foils were materials of metal suitable for use in the manufacture of *any* named or like aricle in paragraph 1527, the question of suitability became one of fact with the accompanying presumption in favor of the collector's finding. *Mamluck & Co. et al.* v. *United States*, 6 Ct. Cust. Appls. 556, T.D. 36198. The words "suitable for use" do not imply or require chief use on the one hand, or possibility of remote use on the other. Rather, "they imply a commercial suitability or fitness in the condition imported." *United States* v. *Lorsch & Co.*, 8 Ct. Cust. Appls. 109, T.D. 37222. The only testimony in this case on commercial usage was given in the following question and reply at the trial (R. 8, 9) :

Q. Now, based upon your experience, Mr. Bobins, have you or your company ever used Plaintiff's Exhibit 1, for any other purpose than you have already described?—A. We have never used it for any other purpose except the buckle.

The sole or exclusive use of an article by the importer has been recognized as insufficient in itself to overcome the presumption attending the collector's classification under paragraph 1527(d). *Coro, Inc.* v. *United States*, 41 CCPA 215, C.A.D. 554. In the *Coro* case, *supra*, imported heart-shaped pieces of silver stamped from a larger piece of metal were assessed with duty under paragraph 1527(d). The evidence indicated that the importer's sole use of the articles was in the production of earrings or brooches for women and the claim was for

classification under paragraph 1527(a)(2) as unfinished jewelry. The court stated the issue to be:

\* \* \* Whether these pieces of silver are unfinished articles of jewelry, suitable in their imported condition for no other commercial use; or merely pieces of silver material susceptible for use in the manufacture and sale of numerous articles of merchandise otherwise enumerated in paragraph 1527.

In overruling the protest and sustaining the trial court's decision, the appellate court relied upon the following information developed at trial: (1) plaintiff's witness, a buyer of materials for the importer corporation, admitted that, in his opinion, the imported articles were suitable for commercial uses other than the making of jewelry, although he had never seen them so used, and (2) defendant's witness, president of a costume jewelry manufacturer, stated that the involved stampings were suitable for use with many different items such as a lady's pocketbook or cigarette cases and that he had seen like articles so used.

In the instant case, we have no such testimony before us. However, insofar as plaintiff's case rests primarily on the combination of the sample evidence together with the exclusive use testimony of its only witness, its burden of proof has not been met. As discussed above, the imported articles possess an insufficient amount of distinguishing characteristics to negate, upon examination, applicability for commercial usage in ways other than attachment to belt buckles. Specifically, there is nothing apparent about the construction of the foils which renders them unsuitable for use with several named articles in paragraph 1527(c). Further, as a direct implication of the *Coro* decision, *supra*, the presumed fact of commercial suitability is likewise not overcome by the mere introduction of evidence respecting the importer's present use of the merchandise. While the burden of showing more than this was squarely on the plaintiff from the start, the record remains silent on the issue of the commercial susceptibility of these or like articles. In the face of such silence plaintiff's protest must be overruled and judgment will be rendered accordingly.